Welch, J.
It seems to us that the letter from Sterling & Ahrens to Moore & Co., handed to the latter by White, sufficiently authorized him to make the purchase in question. It gives to White “ full authority ” to act for Sterling & Ahrens “ in regard ” to their claim. Words of authority, by rnn absent creditor to a present agent, in regard to any particular matter, could hardly be made broader. They seem to authorize any and all honá-fide acts of the agent which had relation to the debt, and which the principal himself could lawfully perform. Had it been the actual intention to include the power to cancel the debt in whole or in part, by compromise, by payment, or by satisfaction otherwise, at the discretion of the agent, it is difficult to see what other more .appropriate general language could have been used. The *399 letter specifies no particular act or acts which the agent is .authorized to do in regard to the debt. If, for this i’eason, it must be held as giving no authority to take property in payment of the debt, for the same reason it must be held as giving no authority to accept payment of it in money, to cause it to be secured, or to do any other specific act in relation to it. “ Full ” authority to act “ in regard ” to the debt seems to us to authorize either, any, and all of these, or the like acts of the agent. The plain reading of the letter is, that the “ matter ” in regard to which the agent was authorized to act was the debt, the “ bill of coffee,” and not, as counsel assume, the securing of the debt. The letter equally omits to give specific authority to secure the debt, as it does to give specific authority to compromise, compound, or receive satisfaction of it in property.
If we are right in our construction of this letter there was no case here for a new trial, and the court did not err in overruling the motion therefor, irrespective of the testimony of White. That testimony, however, as we read it, only confirms the fact of authority appearing upon the face of the letter. White swears that he was, in fact, authorized to make the purchase.
It remains to inquire whether the court erred in its charge to the jury, or in its refusal to charge as requested, to the prejudice of the plaintiff in error. We think it did not. The proposition laid down by the court, that the power to take a mortgage includes the power to purchase, was a mere abstraction, and it is immaterial to inquire as tó its soundness. There was no evidence in the case tending to show specific or exclusive power to take a mortgage, or to take any other form of security. All the evidence tending to show any power in the agent to cause the debt to be secured, did so by tending to show a broader and more general power, which, among other things, might include the authority to take security. Whether, therefore, the single power to take security, had that alone been granted, would have authorized the purchase made by White, was wholly immaterial in the case.
The objection to the remark of the court, that White *400 would, in the opinion of the court, have been liable to Sterling & Ahrens, had he not made the arrangement offered him,, and which he did make, we conceive also to be not well founded. We do not understand the court in this remark as-taking the case from the jury. In connection with what precedes it, the remark ought evidently to be understood in a hypothetical sense, that is, as a proposition of law arising in case the jury should find the existence of the letter, and. should credit the testimony of "White. In that sense the-proposition of the court was in our judgment sound and unobjectionable.
We think also that the court did not err in refusing the instruction asked, namely, that airthority to White to “ investigate ” the claim, to “ arrange ” it, to “ give time ” upon it,, to “ collect ” it, and to “ obtain security ” for it, “ did not include authority to take “ the goods in controversy ” in payment of the claim. A charge in that form might have misled the jury to believe that the court took it for granted there was no other authority proven in White, beyond that legally and technically imported by these words. The court was not asked to charge the general proposition, that authority to “ secure ” a debt, to arrange it, etc., does not authorize such a purchase ; nor was it asked to charge,‘hypothetically, that if -the jury should find that White had only such authority in the premises as was legally imported bj^ these-terms, they should find that the purchase of the goods was-unauthorized. It is asked, in effect at least, to charge that the .authority to White to arrange, secure, etc., did not authorize the purchase in question. What was, in fact, the extent of White’s authority was a question for the jury, and was to-be determined, not merely upon his cross-examination, where-alone these words, “ secure,” “arrange,” etc., are found, but as well upon his testimony in chief, where he asserts his full power in the premises, and also upon the letter of Sterling & Ahrens. It was for the jury to say whether White, in his-cross-examination, meant to be understood that his only purpose or arithority was to “ arrange ” the claim, “ secure it,” etc. It was also competent for the jury to interpret these- *401 words of White’ found in his cross-examination, in the light of what he had said in chief, and of the letter, and to say whether he used them in their primary legal sense, and if' possible to assign a meaning to them which would make him consistent with himself, and harmonize the whole testimony. I know of no rule of law making it the duty of a. jury to take an isolated portion of a witness’s testimony, and assign to it the strict technical meaning of its particular words. The jury had a right, in view of all that White said'on the subject of his authority, to hold that he used the word. “ secure,” not in its primary legal sense, but in the sense of saving the debt, in which, I suppose, he actually did use the word.
We fail to see any error in the record to the prejudice of" the plaintiff in error.
The judgment will, therefore, be affirmed.
Scott, O.J., and White, Eat, and MoIlvaine, JJ'., concurred.